UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

GARVEY RAFEAL BOLIVAR-ASCANIO,

Petitioner,

v.

Case No. 26-cv-1319-pp

SHERIFF DALE J. SCHMIDT,
ACTING DIRECTOR RAYMOND HERNANDEZ,
MARKWAYNE MULLIN, TODD BLANCHE
and DAVID VENTURELLA,

Respondents.

---

**ORDER GRANTING *HABEAS* PETITION, DENYING REQUEST FOR ATTORNEY FEES (DKT. NO. 1) AND CLOSING CASE**

---

Petitioner Garvey Rafeal Bolivar-Ascanio, a citizen of Venezuela, filed a petition under 28 U.S.C. §2241 after DHS officers removed him from his vehicle in Madison, Wisconsin and placed him in mandatory detention without providing an individualized bond hearing. Dkt. No. 1 at ¶¶24-26. At the time of his arrest, the petitioner had been working in Madison and had a Social Security number and a pending petition for asylum. Id. The government asserts that it has the authority to detain the petitioner without a hearing because in 2022, he entered the United States without being inspected or admitted. Dkt. No. 3 at 2. The petitioner seeks an individualized bond hearing or release. Dkt. No. 1 at 26 (Prayer for Relief).

The respondents have filed a letter in response to the court's order to show cause (Dkt. No. 2); they report that in light of Seventh Circuit's recent decision in Cirrus Rojas v. Olson, Appeal No. 25-3127, 2026 WL 2198315 (7th

Cir. 2026), immigration judges in this circuit now will be providing individualized bond hearings. Dkt. No. 3 at 2. The respondents assert that the court should require the petitioner to exhaust his remedies by going to the immigration court and seeking a bond hearing, but they ask that if the court declines to impose that requirement, it give them at least ten days to conduct a bond hearing and it place on the petitioner the evidentiary burden of showing that he is not a flight risk or a danger to the public. Id. at 3 and 3 n.3.

The court will grant the petition and order the respondents to afford the petitioner a bond hearing within ten days or, if the respondents cannot comply with that order, to release the petitioner under reasonable conditions of supervision.

## I. Background

The petitioner, a twenty-seven-year-old national of Venezuela, entered the United States without inspection in or about 2022. Dkt. No. 1 at ¶21. Following his entry, he filed a Form I-589 application for asylum with U.S. Citizenship and Immigration Services and was issued an Employment Authorization Document and a Social Security number. Id. at ¶¶22-23. The petitioner alleges that he has lived and worked in Madison lawfully with no encounters with immigration enforcement prior to his arrest on June 30, 2026. Id. at ¶23. He says that he was forcibly removed from his vehicle without explanation and without officers asking him any questions. Id. at ¶24. According to the petitioner, DHS placed him in removal proceedings, detained him in the Dodge County Jail and classified him as subject to mandatory detention under 8 U.S.C. §1225(b)(2)(A). Id. at ¶¶25-26. He remains in custody, separated from his family and community, without having been afforded an individualized hearing. Id. at ¶27-28.

## II. The Petition (Dkt. No. 1)

The petitioner argues that his mandatory detention under 8 U.S.C. §1225(b)(2) violates the Immigration and Nationality Act (INA) because that statute does not apply to noncitizens who entered without inspection and who later were apprehended while residing in the United States. Id. at ¶50. According to the petitioner, 8 U.S.C. §1226(a) requires a bond hearing with an individualized custody determination based on his risk of flight or dangerousness. Id. at ¶66. He further argues that under Matthews v. Eldridge, 424 U.S. 319 (1976), his detention violates his Fifth Amendment due process rights. Id. at ¶¶68-76.

### A. Jurisdiction

A federal court may issue a writ of *habeas corpus* when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(3). A petitioner may file a petition under §2241 to challenge detention orders in immigration proceedings. Zadvydas v. Davis, 533 U.S. 678, 688 (2001).

This court agrees with the other judges in this district who have decided that federal district courts have jurisdiction to consider such petitions in immigration proceedings if "the petitioner is not asking the court to review a removal order, the decision to initially detain him or seek his removal, or any part of the process by which his eligibility for removal will be determined." Ramirez Valverde v. Olson, Case No. 25-cv-1502, 2025 WL 3022700, at *1 (E.D. Wis. Oct. 29, 2025), appeal filed December 23, 2025 (citing Jennings v. Rodriguez, 583 U.S. 281, 294 (2018)). "Title 8, United States Code, Sections 1252(a)(2)(B)(ii), (b)(9), and (g), do not deprive a federal district court of jurisdiction to consider challenges to a person's detention pending removal." Id.

(citing H.G.V.U. v. Smith, No. 25 CV 10931, 2025 2025 WL 2962610, at *2-3 (N.D. Ill. Oct. 20, 2025)). See also Cirrus Rojas v. Olson, Case No. 25-cv-1437, 2025 WL 3033967, at *3-4 (E.D. Wis. Oct. 30, 2025) (Judge Ludwig), rev'd 2026 WL 2198315 (7th Cir. July 30, 2026); Lopez De La Cruz v. Schmidt, Case No. 25-cv-1562, 2025 WL 5095296, at *2-3 (E.D. Wis. Nov. 19, 2025) (Judge Adelman); Ugarte-Arenas v. Olson, Case No. 25-C-1721, 2025 WL 3514451, at *3 (E.D. Wis. Dec. 8, 2025), appeal filed January 7, 2026 (Judge Griesbach).

The petitioner is not challenging the immigration judge's removal order, ICE's decision to detain him or to seek his removal or the process by which his eligibility for removal will be determined. The petition challenges only the petitioner's continued confinement at the Dodge County Jail without a bond hearing. Given the limited relief sought, the court concludes that it has jurisdiction to consider the petition.

B. The Parties' Arguments

1. *Petitioner's Arguments* (Dkt. No. 1)

The petitioner argues that his continued detention without eligibility for an individualized bond hearing violates the INA and the Due Process Clause of the Fifth Amendment. Dkt. No. 1 at ¶¶77-90. He explains that the INA prescribes three basic forms of detention for most noncitizens in removal proceedings: (1) 8 U.S.C. §1226 for noncitizens already in the country; (2) 8 U.S.C. §1225(b) for noncitizens seeking entry into the country; and (3) 8 U.S.C. §1231(a)-(b) for noncitizens who have been ordered removed (and for whom the order has become final). Dkt. No. 1 at ¶¶35-39. The petitioner asserts that the respondents' policy, adopted by the Board of Immigration Appeals in In re Yajure-Hurtado, 29 I. & N. Dec. 216 (BIA 2025), erroneously classifies all persons who entered the United States without inspection or admission as

"applicants for admission" under §1225(b)(2). Id. at ¶¶44-46. He cites to the statutory text, the statutory framework, congressional intent and the longstanding practice of granting bond hearings to most people who entered without inspection and who were apprehended inside the United States. Id. at ¶¶48-58. The petitioner also cites numerous federal courts which have agreed with his position. See id. at ¶¶59-61 (collecting cases). He argues that his detention violates the INA because §1225(b)(2) does not apply to noncitizens like him who entered without inspection and later were detained inside the country after having lived here for approximately four years prior to being detained. Id. at ¶¶62-67.

The petitioner also argues that noncitizens are entitled to due process under the Fifth Amendment. Id. at ¶68 (citing Demore v. Kim, 538 U.S. 510, 523 (2003)). Applying the three-part test from Matthew v. Eldridge, 424 U.S. 319 (1976), the petitioner argues that he has been detained in conditions that are indistinguishable from criminal incarceration. Id. at ¶70. He argues that the government's current procedure creates a substantial risk of erroneous deprivation of his liberty interest in remaining free from arbitrary confinement. Id. at ¶74. He argues that there are reasonable alternatives available to the respondents under §1226(a). Id. at ¶75. According to the petitioner, the respondents' interest in maintaining the current procedure is minimal and flies in the face of three decades of prior practice and the many decisions of federal courts across the country. Id. at ¶76.

The petitioner asks the court to issue a writ of *habeas corpus* requiring the respondents to immediately release him or to afford him a bond hearing. Id. at 25. He asks the court to enjoin the respondents from moving him outside the jurisdiction, declare that his detention violates the INA and Due Process

Clause of the Fifth Amendment and award him costs and fees under 28 U.S.C. §2412. Id. at 26.

2. *Respondents' Letter Response to Order to Show Cause* (Dkt. No. 3)

In response to this court's order to show cause why the petition should not be granted, dkt. no. 2, the respondents filed a letter acknowledging the Seventh Circuit's decision in Cirrus Rojas. Dkt. No. 3 at 2 (citing Cirrus Rojas, 2026 WL 2198315, at *7). The respondents concede that under Seventh Circuit authority, the petitioner is an "applicant for admission" but not "seeking admission to the United States." Id. Although they advise the court that they are considering whether to appeal the Seventh Circuit's decision, they recognize that the decision is binding and that it means the petitioner's detention is lawful under 8 U.S.C. §1226 and not 8 U.S.C. §1225(b)(2)(A). Id.

The respondents state that immigration judges operating in the Seventh Circuit no longer will be guided by the Board of Immigration Appeals' decision in Yajure-Hurtado, 29 I&N Dec. 216. Id. They ask the court to require the petitioner to exhaust his administrative remedies "by seeking a bond hearing before the immigration court." Id. They say that at least one court in this circuit has required a petitioner to exhaust his administrative remedies before presenting a *habeas* petition. Id. (citing Hernandez Melchi v. Swearingsen, Case No. 26-cv-00488, 2026 WL 2279391, at *2 (S.D. Ind. Aug. 7, 2026)). The respondents argue that if the petitioner moves for a custody redetermination in immigration court, a bond hearing will be scheduled and held. Id.

In the alternative, the respondents ask that if the court orders them to provide a bond hearing, the court place the evidentiary burden on the petitioner to show that he is not a flight risk or dangerous to the public. Id.

(citing Cirrus Rojas, 2026 WL 2198315, at *4). They ask the court to give them at least ten days to hold the hearing. Id. at 3, n. 3.

C. Discussion

1. *Seventh Circuit Precedent*

Petitioners in this district and across the country have been filing petitions under 28 U.S.C. §2241, asking courts to consider the two statutes that govern the detention and removal of noncitizens: 8 U.S.C. §§1225 and 1226. Most of these petitions ask the court to decide whether the petitioner is eligible for release on bond while removal proceedings are pending. Section 1226 provides for the discretionary release of noncitizens on bond; §1225 requires detention with no opportunity for release on bond. Until July 30, 2026, the Seventh Circuit had not issued a majority opinion addressing this specific issue. As of July 30, 2026, the Seventh Circuit now has joined the majority of circuits holding that noncitizens present in the country without admission and not "seeking admission" fall under §1226, not §1225(b)(2)(A). Cirrus Rojas, 2026 WL 2198315, at *2, *17. In Cirrus Rojas, the Seventh Circuit ruled that such individuals are eligible for bond hearings subject to the INA's other requirements. Id.

2. *This Court's Analysis*

"As with all questions of statutory interpretation, we start with the text of the statute to ascertain its plain meaning." United States v. Melvin, 948 F.3d 848, 851 (7th Cir. 2020) (quoting Jackson v. Blitt & Gaines, P.C., 833 F.3d 860, 863 (7th Cir. 2016)).

> In ascertaining a statute's plain meaning, we "must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 . . . (1988). Unless words are otherwise defined, they "will be interpreted as taking their ordinary, contemporary, common

> meaning." *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 . . . (2014) (quoting *Perrin v. United States*, 444 U.S. 37, 42 . . . (1979)). We find words' ordinary, contemporary, common meaning by looking at what they meant when the statute was enacted, often by referencing contemporary dictionaries. *Jackson*, 833 F.3d at 863. If the statutory language's plain meaning is unambiguous, our inquiry ends there. *See River Rd. Hotel Partners, LLC v. Amalgamated Ban*k, 651 F.3d 642, 649 (7th Cir. 2011).

Id. at 851-52. The court must read the statute in a way to give effect to all provisions, "so that no part will be inoperative or superfluous, void or insignificant." Corley v. United States, 556 U.S. 303, 314 (2009).

The text of §1225(a)(1) defines "applicant[s] for admission" as

> [a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

"Admitted" is defined elsewhere in Title 8 as the "lawful entry . . . into the United States after inspection and authorization by an immigration officer." 8 U.S.C. §1101(a)(13)(A). Section 1225 explains that "all aliens (including alien crewman) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." 8 U.S.C. §1225(a)(3).

That is §1225(**a**)(1). There is a separate track under §1225(**b**)(1) for processing arriving aliens and "certain other aliens who have not been admitted or paroled." This includes those who are inadmissible due to fraud, misrepresentation or lack of valid documentation; those whom an officer determines are inadmissible and seeking asylum; and other aliens who receive special designation by the Attorney General. 8 U.S.C. §1225(b)(1)(A)(i)-(iii). Applicants for admission covered by §1225(b)(1) are removed "without further

hearing or review" under an expedited removal process, unless the alien "indicates either an intention to apply for asylum . . . or a fear of persecution," in which case that alien is referred for an asylum interview. 8 U.S.C. §1225(b)(1)(A)(i)-(ii).

Section 1225(b)(2) applies to all "applicants for admission" not covered by §1225(b)(1). Cirrus Rojas, 2026 WL2198315, at *5-*6. Section 1225(b)(2) states that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. §1225(b)(2)(A). The phrase "seeking admission" is not defined by statute, but "seeking" is the present participle of the verb "seek;" it implies a present action. "Admission" is defined as a request for lawful entry after inspection and authorization. See 8 U.S.C. §1101(a)(13)(A). Read as a whole, §1225(b)(2) requires mandatory detention of a noncitizen who presently is seeking entry but whom the immigration officer has determined is not clearly entitled to be admitted.

The Cirrus Rojas decision supports that conclusion. The petitioner in that case had filed a petition for asylum. Cirrus Rojas, 2026 WL 2198315, at *7. The Seventh Circuit determined that petitioners like Cirrus Rojas, who have filed for asylum, are not "seeking admission" to the United States, but are seeking to remain in the United States "through other forms of relief that are not admission." Id. The petitioner in Cirrus Rojas was present in the country but had not been admitted; he "did not wish to seek the 'lawful' entry that he could never obtain." Id. The Seventh Circuit contrasted Cirrus Rojas's status with that of an applicant for admission at the border who can affirmatively seek and secure admission. Id. The Seventh Circuit determined that the statute's

plain text showed that Cirrus Rojas—who entered the country without inspection, applied for asylum and was arrested in the United States—was not "seeking admission" and was not covered by §1225(b)(2)(A). Id.

As the Cirrus Rojas court pointed out, the government's reading of §1225(b)(2)(A) is difficult to square with the broader statutory framework. Id. at *12. Section 1226 is titled "Apprehension and detention of aliens." Section 1226(a) states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. §1226(a). While that decision is pending, the Attorney General may "continue to detain the arrested alien," "release the alien on bond of at least $1,500" or "release the alien on conditional parole." 8 U.S.C. §§1226(a)(1)-(2). An immigration officer authorized to issue an arrest warrant may release an alien if the alien demonstrates that he does not pose a danger to property or persons and that he is likely to appear for future proceedings. 8 C.F.R. §1236.1(c)(8). After the district director makes the initial custody determination (including the setting of a bond), the alien may seek "amelioration" of release conditions, and prior to any final order, an immigration judge may detain the alien, release him or set a bond. 8 C.F.R. §1236.1(d)(1). The Attorney General may revoke bond or parole, and may rearrest and detain the alien "under the original warrant." 8 U.S.C. §1226(b). The United States Supreme Court has referred to §1226 as the "default rule" for arresting and detaining aliens "already present in the United States" pending removal. Jennings, 583 U.S. at 303.

There is an exception under §1226(c) that requires the detention of persons "who fall[ ] into one of the enumerated categories involving criminal offenses and terrorist activities." Jennings, 583 U.S. at 303; 8 U.S.C.

§1226(c)(1)(E)(i)-(ii). These individuals are not entitled to a bond hearing and may be released under very limited circumstances. 8 U.S.C. §1226(c)(4). Congress recently amended §1226 to include in this section any alien who has been "charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or bodily injury to another person." Laken Riley Act, Pub. L. No. 119-1, §2, 139 Stat. 3, 3 (2025). Giving effect to both §1225 and §1226, the United States Supreme Court has offered the following guidance:

> U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).

Jennings, 583 U.S. at 289.

Relying on the plain language of both statutes, and giving meaning to all the language of both statutes, the court concludes that the petitioner falls under the ambit of §1226. The petitioner is an alien awaiting a final decision regarding his removal proceeding. At the time of his arrest by DHS officials, the petitioner was not seeking admission into the country at a border or port of entry, nor was he seeking admission after inspection. Instead, the petitioner already had been living in this country for around four years. The petitioner does not fall within one of the enumerated categories under §1226(c) involving criminal offenses and terrorist activities, and the respondents have not made such an argument.

In the three decades prior to 2025, this petitioner—a noncitizen who'd been living in the country for four years—would have been entitled to a bond

hearing under §1226. In 2025, however, the Department of Homeland Security implemented a new policy amounting to a conclusion that prior administrations, the agency and the courts had been misinterpreting the language of §1226 for those three decades. The agency now treats everyone who has entered the United States illegally as an applicant for admission under §1225(a)(1), regardless of how long that person has been present in the United States or how far they are found from the border. The Board of Immigration Appeals gave force to that policy by holding that immigration judges lacked the authority to consider requests to release on bond persons who entered the country without inspection. Yajure-Hurtado, 29 I. & N. Dec. at 229. Classifying every noncitizen as an "applicant for admission" renders superfluous the language in §1226(c)(1) and cannot be squared with the text of the statute or the facts of this case.

The Cirrus Rojas court agreed:

> Until last year, all three branches of our government agreed that Section 1225(b)(2)(A) applied only at the border. Five successive presidential administrations followed this interpretation. And the Executive's sudden about-face presents its own reason to doubt the government's new reading. We may "consider the consistency of an agency's views," and its "track record" over time, to assess "the persuasiveness of any interpretation it proffers in court." *Biden v. Nebraska*, 600 U.S. 477, 519 . . . (2023) (Barrett, J., concurring) (citation omitted). We accept that when past practice clashes with a statutory mandate, it must change. After all, the courts interpret the law and often order the government to depart from the executive's prior understanding of the law. But here the government's about-face stems from anything but a clear statutory mandate. Instead, the government tries to mix legal fiction with real-world facts contrary to the statute's language. We hesitate to accept such a change after three decades of consistent contrary interpretation. Cf. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 156–57 . . . (2000).

Cirrus Rojas, 2026 WL 2198315, at *15.

The court recognizes that the circuits that have decided this question of statutory interpretation have split 6-2, with the majority rejecting the government's interpretation. Compare Barbosa da Cunha v. Freden, 175 F.4th 61 (2d Cir. 2026); Lopez-Campos v. Raycraft, 175 F.4th 713, 732 (6th Cir. 2026); Cirrus Rojas, 2026 WL 2198315, at *15 (7th Cir. 2026); Rodriguez Vazquez, No. 25-6842, 2026 WL 2196424, *26 (9th Cir. July 30, 2026); Santillan Quiroz v. Mullin, 180 F.4th 1226 (10th Cir. 2026); Hernandez Alvarez v. Warden, 175 F.4th 1258, 1276 (11th Cir. 2026) with Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026); Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026). But this court is bound to follow the Seventh Circuit (and before the Cirrus Rojas decision, had decided the issue the way most circuit courts had done).

The court finds that §1225(b)(2)(A) applies to those noncitizens who are applicants for admission and seeking admission at the border or port of entry, and that §1226 applies to those noncitizens arrested in the interior of the country. Because the petitioner was arrested years after his entry to this country and many miles from the border, he falls under the ambit of 8 U.S.C. §1226. The court finds that his continued detention under §1225 without a bond hearing violates federal law.

Although recognizing that the petitioner is eligible for a bond hearing in the immigration court, the respondents have asked the court to order the petitioner to file a request with the immigration court for a bond hearing or, in the alternative, to give the respondents ten days to hold the hearing. Judicial discretion governs whether exhaustion should be required because there is no statutory exhaustion requirement. Gonzalez v. O'Connell, 355 F.3d 1010, 1016 (7th Cir. 2004). The court finds that requiring the petitioner to return to the

immigration court to file for the same relief that this court can grant would cause unreasonable delay. The petitioner has been detained since June 30, 2026 under circumstances that violate federal law, which is why the court will not require exhaustion. See id. (holding that individual interests demand that exhaustion be excused when "requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay . . . ."). The court will order the respondents to give the petitioner an individualized bond hearing within ten days.

In his request for relief, the petitioner requested fees under 28 U.S.C. §2412, but has not filed an application as required under the Equal Access to Justice Act. 28 U.S.C. §2412(d)(1)(B). The petitioner would be entitled to fees only if the (1) government's litigation position was not substantially justified; (2) no special circumstances make an award unjust; and (3) the request is timely filed. 28 U.S.C. §2412(d)(1)(A), (B); Cunningham v. Barnhart, 440 F.3d 862, 863 (7th Cir. 2006). Given the circuit split on this issue, it is difficult to argue that the government's position was not substantially justified. See Herrera v. Olson, Case No. 25-cv-1994, 2026 WL 1602258, at *2 (E.D. Wis. June 4, 2026) (finding the division within this district and across the country supports a finding that the government's position was substantially justified).

## III. Conclusion

The court **GRANTS** the petition for a writ of habeas corpus, filed under 28 U.S.C. §2241, dkt. no. 1, under the following conditions:

The court **ORDERS** that within ten days of the date of this order, the respondents must (1) afford the petitioner a bond hearing before an immigration judge under 8 U.S.C. §1226(a); or (2) if the respondents cannot

otherwise comply with the court's order, release the petitioner from custody under reasonable conditions of supervision.

The court **DENIES** the petitioner's request for attorneys' fees. Dkt. No. 1 at 26.

The court **ORDERS** that this case is **CLOSED**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 20th day of August, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**